**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-CR-60273-PCH**

UNITED STATES OF AMERICA,
          Plaintiff,

v.

ROBERT MCKINLEY THOMAS,
          Defendant.

_____/

### OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

Mr. Robert McKinley Thomas ("Mr. Thomas"), through undersigned counsels, and pursuant to Fed. R. Crim. P. 32 (f)(1)&(2), respectfully objects to portions of the Pre-Sentence Investigation Report ("PSI") filed on May 8, 2026. [ECF No. 208].

### 1. OBJECTION TO PARAGRAPH 53 OF THE PSI: MR. THOMAS QUALIFIES FOR A MITIGATING ROLE REDUCTION UNDER U.S.S.G. § 3B1.2

Paragraph 53 declines any mitigating role adjustment on the ground that Thomas's participation was consistent with the average participant in the conspiracy.

The government's own sentencing memorandum describes Thomas's conduct precisely: he made 116 ATM withdrawals, "kept approximately $50 to $100" per $1,000 withdrawn, and returned the balance to the co-conspirators who had supplied the debit cards. [ECF No. 223 at 7]. By the government's account, Mr. Thomas retained between $5,800 and $11,600 across all 116 transactions in a scheme that generated over $2 million.

That is not the average participant. The average participant designed the scheme, obtained victim identity data, submitted fraudulent unemployment applications, and procured counterfeit identifications. Thomas did none of those things. He received debit cards from people whose names he initially did not know, withdrew cash at ATM locations he was directed to, and handed most of the money back. He organized nothing. He recruited no one. He had no decision-making authority. He did not know the scope of the scheme. His benefit was 5 to 10 cents per dollar.

Section 3B1.2 provides a four-level reduction for a minimal participant and a two-level reduction for a minor participant. Application Note 3(C) to § 3B1.2 (2025 Manual) identifies five non-exhaustive factors: the degree to which the defendant understood the scope and structure of the criminal activity; the degree of participation in planning or organizing; the degree to which the defendant exercised decision-making authority; the nature and extent of participation; and the degree to which the defendant stood to benefit financially. Application Note 3(C) further provides that an "essential or indispensable role" is not determinative — a defendant performing such a role may still receive the adjustment if he is "substantially less culpable than the average participant."

Mr. Thomas scores low on all five factors. His understanding of the scheme's scope was limited to his own ATM activity. His planning role was zero. His decision-making authority was zero. His participation was execution

of a single mechanical task. His financial benefit was 5 to 10 cents per dollar, for a total take that did not exceed $11,600. Measured against the architects, organizers, and recruiters who ran this conspiracy, Mr. Thomas was plainly among the least culpable participants.

The PSR's reasoning — that Mr. Thomas' conduct was consistent with the average participant — fails for two independent reasons. First, it conflates Mr. Thomas with participants who submitted applications, created identifications, or organized the scheme. Second, it does precisely what the guidelines prohibit: treating an indispensable role as a bar to the reduction. *See United States v. Robles-Lopez*, 169 F.4th 1 (1st Cir. 2026) (vacating sentence where court "placed inappropriate determinative weight on the government's assertion that her role was indispensable to the success of the criminal endeavor, despite the Sentencing Guidelines' direct guidance to the contrary"). The PSR does not engage in the comparative analysis the guidelines require. *See United States v. Klensch*, 87 F.4th 1159, 1159 (9th Cir. 2023) (remanding where district court failed to conduct required comparative-liability analysis).

Mr. Thomas' lack of knowledge of the scheme's structure is itself indicative of minor or minimal participation. *United States v. Moeller*, 80 F.3d 1053, 1053 (5th Cir. 1996). Where a defendant "knew nothing of [the] underlying fraud scheme" and "acted merely" in a limited mechanical capacity, a finding of minimal — not merely minor — participant status was

warranted. *United States v. Westerman*, 973 F.2d 1422, 1422 (8th Cir. 1992). The controlling standard in this circuit requires the Court to compare Mr. Thomas' role to both the relevant conduct for which he is held accountable and to the other participants in the conspiracy. *United States v. Rodriguez De Varon*, 175 F.3d 930, 940–44 (11th Cir. 1999) (en banc).

Mr. Thomas requests a four-level reduction for minimal participant status under § 3B1.2(a), or in the alternative a two-level reduction for minor participant status under § 3B1.2(b).

### 2. OBJECTION TO PARAGRAPH 68 OF THE PSI: THE LOSS AMOUNT OVERSTATES ACTUAL HARM, AND THE COURT SHOULD APPLY THE COMMISSION'S 2026 INFLATION-ADJUSTED LOSS TABLE.

Paragraph 68 attributes a loss of $2,095,831 to Mr. Thomas and applies the sixteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I).

First, the loss figure of $2,095,831 overstates the harm attributable to this offense. The parties stipulated in the plea agreement that restitution — the actual loss to identified victims — is $1,670,954. Restitution reflects what victims did not recover; it is the most accurate measure of real-world harm. The PSR's figure of $2,095,831 appears to represent the gross amount disbursed by the California EDD before offset or recovery, not the net loss to victims. Under U.S.S.G. § 2B1.1, Application Note 3(A), "actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense. The restitution figure of $1,670,954 is the better measure of actual loss here and is the figure the Court should use.

Second, and alternatively, the Court should apply the Commission's 2026 amendment to the § 2B1.1 loss table, which becomes effective November 1, 2026, to the loss figure in this case.

The Commission submitted that amendment to Congress on April 30, 2026. It raises the threshold for the sixteen-level enhancement from losses exceeding $1,500,000 to losses exceeding $2,000,000. The Commission's stated rationale is explicit: *"monetary losses in current offenses reflect, to some degree, a lower degree of harm and culpability than equivalent amounts when the monetary tables were last substantively amended."* 2026 Amendments to the Sentencing Guidelines at 27 (Apr. 30, 2026). In other words, the Commission has found that the current table overstates the seriousness of offenses like this one because the dollar thresholds have not kept pace with inflation since 2014.

That rationale applies to Mr. Thomas' conduct today, not only to conduct occurring after November 1, 2026. The inflation the Commission identified did not begin in November 2026; it has been accumulating since 2014.

Applied to the actual loss of $1,670,954, the 2026 table yields a fourteen-level enhancement — not sixteen — because $1,670,954 falls below the amended $2,000,000 threshold and above the $750,000 threshold for level fourteen. That reduces the Total Offense Level by two levels.

## CONCLUSION

Mr. Thomas respectfully asks the Court to sustain both objections and recalculate the advisory guideline range.

If the Court sustains Objection No. 2, the loss enhancement drops from 16 levels to 14 levels because the actual loss—$1,670,954—is below the 2026 Guidelines' $2,000,000 threshold. That reduces the Total Offense Level from 24 to 22, producing a range of 51 to 63 months on Count 1.

If the Court also sustains Objection No. 1, a minimal-role reduction would lower the Total Offense Level to 18, with a range of 33 to 41 months. A minor-role reduction would lower it to 20, with a range of 41 to 51 months.

Alternatively, if the Court sustains only the role objection, the corrected range would still be 33 to 41 months for minimal role or 41 to 51 months for minor role. In all events, when combined with the mandatory consecutive 24-month sentence on Count 24, the corrected total sentence is materially lower than the PSR's 87-to-102-month calculation.

**WHEREFORE,** For the reasons outlined above, Mr. Thomas respectfully requests that the Court direct the U.S. Probation Office to correct the PSI accordingly.

Respectfully submitted,

**STUMPHAUZER KOLAYA
& SLOMAN, PLLC**
2 South Biscayne Blvd., Suite 1600
Miami, FL 33131
Telephone: (305) 614-1400

/s/ *Juan J. Michelen*
Fla. Bar No. 92901
jmichelen@sknlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

*s/ Juan J. Michelen*