**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-CR-60273-PCH**

UNITED STATES OF AMERICA,
          Plaintiff,

vs.

ROBERT MCKINLEY THOMAS
          Defendant.

_____/

**SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

Mr. Robert McKinley Thomas is 73 years old. He is in poor health. Four years ago, he made 116 ATM withdrawals in a fraud scheme he did not design, kept $50 to $100 per $1,000 withdrawn, and handed the rest back. His total take across the entire offense was at most $11,600.

Mr. Thomas asks the Court to impose 12 months on Count 1 and 24 months on Count 24, to run consecutive, for a total of 36 months. That sentence is sufficient, given Mr. Thomas' age and medical conditions.

**I.   THE GUIDELINE RANGE OVERSTATES MR. THOMAS' CULPABILITY**

The PSR calculates an advisory guideline range of 63 to 78 months on Count 1 and declines to apply a mitigating-role reduction under § 3B1.2. But even if the Court does not apply that reduction under the Guidelines, Mr. Thomas respectfully requests a downward variance because his actual role in the scheme was plainly limited. He performed a mechanical cash-out function, had no planning or organizing role, exercised no decision-making authority,

and received only 5 to 10 cents per dollar. On this record, he was one of the least culpable participants in the offense.

Even accepting the PSR's calculation in full, the loss table does not measure what Mr. Thomas contributed to this offense. He is held accountable for $2,095,831 in losses he did not generate and did not capture. Here, the § 2B1.1 loss table is a poor proxy for culpability.

## II.    THE § 3553(A) FACTORS SUPPORT A SENTENCE OF 36 MONTHS

Mr. Thomas faces a mandatory 24-month consecutive term on Count 24. That term requires two years of incarceration in addition to whatever the underlying offense warrants.

The Supreme Court held in *Dean v. United States* that a sentencing court "may consider a mandatory minimum sentence" on one count when fashioning the sentence on another. 581 U.S. 62, 68 (2017). The Court's authority to vary on Count 1 is not limited by what it must impose on Count 24. The question is what Count 1 requires given everything § 3553(a) demands.

Count 24's mandatory 24 months accomplishes specific deterrence, general deterrence, and punishment for the identity theft conduct. The question for Count 1 is how much additional incarceration is necessary to satisfy the remaining § 3553(a) purposes for a 73-year-old man with COPD who kept $11,600. 12 months is more than sufficient given Mr. Thomas' history and characteristics. That brings the total to 36 months. That is not a light sentence for a man in Mr. Thomas' condition.

Mr. Thomas is 73. He has chronic obstructive pulmonary disease, hypertension, and arthritis. These are § 3553(a)(1) factors: "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Mr. Thomas was born on February 8, 1953, in Jackson, Mississippi. His mother, Winnie Hill, died from childbirth complications in 1957. He was four years old. Raised first by his maternal grandmother, then relocated to Broward County and reared by his paternal grandmother, Melissa Wilson, he grew up in poverty. A child without a mother and without money, raised by an elderly woman in South Florida.

He graduated from Stranahan High School in Fort Lauderdale in 1971 and enrolled at Paine College in Augusta, Georgia. He left two years later because he could not afford the tuition. He never went back. In the 1970s, he married Brenda Cunningham. They had two sons, Todderick and Nicholas, both now in their forties and living in Broward County. Ms. Cunningham died of cancer in 1993.

Mr. Thomas has had a cocaine addiction since age 12. Not adulthood. Age 12. He progressed to crack cocaine by 18 and used daily from there, spending $100 to $500 a week. He has never received substance abuse treatment, though he knows he needs it.

At 60, he found steady work. From 2013 to 2022, nine years, he worked in paint sales at Broward Paint and Wallpaper in Fort Lauderdale, earning $14 an hour. He retired when the business was sold and started drawing Social

Security: $848 a month. At the time of his arrest, he was living in an efficiency unit at the rear of someone's property in Fort Lauderdale. A room without a bathroom or kitchen, in exchange for serving as a caretaker. His brother James died in 2020 at age 68, from COPD. Mr. Thomas has had COPD since 2000. He watched his brother die of the disease he now carries.

The Eleventh Circuit has affirmed a below-guideline sentence on exactly this combination. In *United States v. Gray*, 453 F.3d 1323, 1325 (11th Cir. 2006), the district court imposed 72 months against a guideline floor of 151 months, citing the defendant's age, minimal prior record, and medical condition. The Eleventh Circuit affirmed, holding those factors "are all valid considerations because they relate to the 'history and characteristics of the defendant.'" *Id.* (quoting 18 U.S.C. § 3553(a)(1)).

*Gray* is directly on point. The gap between the guidelines and the imposed sentence there was 79 months. The gap between the PSR range and the 12 months requested here on Count 1 is smaller.

The governing standard comes from *Gall v. United States*, 552 U.S. 38, 47 (2007): no rule requires "extraordinary circumstances" to justify a sentence outside the guidelines range. The district court must make an individualized assessment of the § 3553(a) factors and explain its chosen sentence. *Id.* at 49-51. Review is for abuse of discretion only. *Id.* at 51. "[I]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in

the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81 (1996), quoted in *Gall*, 552 U.S. at 52.

The Sentencing Commission's own data confirms that age materially changes the recidivism calculus. Federal offenders aged 65 and older are rearrested at a rate of only 13.4 percent over an eight-year follow-up period.[1] And among offenders who are 70 or older at sentencing, 38.6 percent receive sentences that exceed their projected life expectancy.[2]

Mr. Thomas is 73. The latest CDC race-and-sex-specific life tables place life expectancy for Black men in the United States at 70.3 years.[3] A 36-month total sentence therefore carries a very different weight for Mr. Thomas than it would for a younger, healthier defendant. The risk of recidivism this Court must evaluate under § 3553(a) is not the same risk posed by a defendant in his thirties.

Additionally, his COPD is not a passing condition. Chronic obstructive pulmonary disease in a 73-year-old is progressive and incurable. Federal incarceration is materially more punishing for this defendant than the same nominal term would be for a healthy adult. This Court may account for that disparity under § 3553(a)(1). *Gray*, 453 F.3d at 1325.

---

[1] U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017).

[2] U.S. Sentencing Comm'n, *Older Offenders in the Federal System* 5, 40 (2022).

[3] Elizabeth Arias, Jiaquan Xu & Kenneth D. Kochanek, *United States Life Tables, 2023*, 74 Nat'l Vital Statistics Reports No. 6, tbl. 16, at 51 (Aug. 21, 2025).

Mr. Thomas' criminal record is a six-decade catalog of his cocaine addiction: non-violent property crimes and drug possession. His bond violations, cocaine positives, were the disease.

No sentence length addresses the addiction that has shaped Mr. Thomas's conduct since childhood. Treatment would. Whatever punitive and deterrence purposes remain after the mandatory 24-month term on Count 24 are not advanced by years of additional incarceration for a 73-year-old with a substance use disorder that predates the founding of this case by six decades.

The government's own submission states it: Mr. Thomas kept "$50-$100 per $1,000 withdrawn." [ECF No. 223 at 7]. Across 116 ATM withdrawals, he retained at most $11,600. He received cards from co-conspirators whose names he did not initially know. He submitted no fraudulent applications. He created no counterfeit identifications. He designed nothing, supervised no one, and recruited no one.

The government recommends identical sentences for Chambers and Mr. Thomas. Chambers is 61; Thomas is 73. [ECF No. 223]. Chambers' photograph appeared on more than 1,900 counterfeit licenses — the dominant face of the scheme. Mr. Thomas appeared on at least 1,700 fewer ATM cameras.

Mr. Thomas' bond violations, while serious, reflect addiction rather than deliberate defiance. Under the government's own disparity framework, Mr. Thomas' age, health, cooperation, and relative culpability support a materially lower sentence than the government is recommending for Chambers. A

sentence of 36 months total — 12 months on Count 1 in addition to the mandatory 24 months on Count 24 — is a sentence that correctly reflects the individual § 3553(a)(1) calculus for this defendant.

The architects of this scheme took the planning, the stolen identity data, the document production, and the overwhelming majority of the proceeds. Mr. Thomas took the ATM exposure and 5 to 10 cents per dollar. A sentence designed for the architects of a $2 million fraud conspiracy is not the sentence for the man at the bottom who pocketed $11,600. The § 3553(a)(1) factor — the nature and circumstances of the offense and the history and characteristics of the defendant — does not support treating them the same.

## III.  CONCLUSION

Mr. Thomas turned 73 this February. He has COPD and has carried a cocaine addiction since age 12. He made 116 trips to an ATM, handed back everything over $50 to $100 per $1,000, and walked away from this conspiracy with at most $11,600. He did not design it, did not recruit anyone, did not submit a single fraudulent application, and did not know who was running it.

The architects of this scheme built the counterfeit identities, submitted the fraudulent claims, and captured the money. Thomas took the ATM exposure and the smallest cut. Sentencing him as if he were one of them does not reflect the nature and circumstances of his offense or the history and characteristics of this defendant. 18 U.S.C. § 3553(a)(1).

The mandatory 24 months on Count 24 will be served. It is not negotiable and not small. For a 73-year-old man with COPD, two years is a real sentence. The question for Count 1 is how much additional incarceration the remaining § 3553(a) factors require for this defendant. On this record, the answer is 12 months.

Thirty-six months is not a light sentence for Robert McKinley Thomas. It is a sentence he will feel every day he serves it. It is sufficient. It is not greater than necessary. 18 U.S.C. § 3553(a). The Court should impose 12 months on Count 1, consecutive to 24 months on Count 24, for a total of 36 months.

STUMPHAUZER KOLAYA
& SLOMAN, PLLC
Two South Biscayne Boulevard,
Suite 1600, Miami, FL 33131
Telephone: (305) 614-1400

*/s/ Juan J. Michelen*
Fla Bar. No. 92901
jmichelen@sknlaw.com

CERTIFICATE OF SERVICE

I certify that on June 10, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

/s/ *Juan J. Michelen*